UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |
|---|---|
| MATTHEW MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:12cv138 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Matthew Moore ("Mr. Moore") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Mr. Moore's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and his claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act. Both parties filed motions for summary judgment, ECF Nos. 12 and 14, with briefs in support, ECF Nos. 13 and 15, which are now ready for resolution.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Mr. Moore's Motion for Summary Judgment, ECF No. 12 be **DENIED**; the Defendant's Motion for Summary

Judgment, ECF No. 14, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED** and that this case be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Mr. Moore filed applications for DIB and SSI on January 28, 2009, alleging a disability onset date of September 30, 2008. R. 142-52.[1] Both applications were initially denied on April 28, 2009, R. 88-89, 116-21, and denied again upon reconsideration on September 15, 2009. R. 114-15. Mr. Moore requested a hearing in front of an administrative law judge ("ALJ") on October 28, 2009, R. 133-36, which was held on July 13, 2010 via video conference. R. 30-46. The ALJ issued his decision on July 29, 2010 that denied both Mr. Moore's DBI and SSI applications. R. 13-25. The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Mr. Moore's request for review of the ALJ's decision on June 20, 2012, R. 10-14, and the ALJ decision became the final decision of the Acting Commissioner. After exhausting his administrative remedies, Mr. Moore filed his complaint for judicial review of the Acting Commissioner's final decision on August 24, 2012. ECF No. 3. The Acting Commissioner filed an Answer on May 15, 2013, ECF No. 9. Because both parties have filed motions for summary judgment, the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.

---

[1] "R." refers to the certified administrative record that was filed under seal on May 15, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1).

1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). The Acting Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Moreover, the Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays*, 907 F.2d at 1456-57. Overall, if the Acting Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Acting Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (granting the Commissioner latitude in resolving inconsistencies in the evidence, which the Court reviews for clear error or lack of substantial evidence).

### III. ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ employs a five-step sequential process in every Social Security disability claim analysis to determine the claimant's eligibility. The Court reviews the record and examines the five-step analysis to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence. 20 C.F.R.

§§ 404.1520 and 416.920.

In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, Mr. Moore has not engaged in substantial gainful activity ("SGA") since September 30, 2008, the alleged onset date of disability, and he met the insured status requirements of the Social Security Act through December 31, 2013, the date last insured ("DLI"). R. 18.[2] Second, Mr. Moore had the following severe impairments: dysautonomia and bradycardia-tachycardia syndrome. *Id.* (citing 20 CFR §§ 404.1520(c), 416.920(c)). The ALJ went on to find that these impairments "limit the claimant's ability to perform the strength demands of basic work activities, including, but not limited to, lifting, carrying, standing, and walking." *Id.* However, the ALJ found that all other alleged impairments were non-severe. R. 19. Third, Mr. Moore does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Fourth, the ALJ determined that Mr. Moore has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). *Id.* Fifth, while Mr. Moore had past relevant work as an automobile mechanic, he was unable to perform any past relevant work due to the ALJ's assessment of a full sedentary RFC finding. R. 24. Furthermore, after considering Mr. Moore's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Moore could perform. R. 24-25.

## IV. RELEVANT FACTUAL BACKGROUND

In both applications, Mr. Moore alleged a disability onset date of September 30, 2008. R.

---

[2] The ALJ did note that the record reflects that Mr. Moore worked for Poquoson Motors, Inc. until November 2008 and was paid $2,129.00 in the fourth quarter of 2008, but for the purposes of his decision, the ALJ assumed that such employment did not constitute SGA. *Id.*

142-52. As of that date, Mr. Moore was a married, twenty-two year-old male[3] who graduated from high school, attended some trade school, and previously worked as an auto mechanic. R. 33-34. At the ALJ Hearing held on July 13, 2010, Mr. Moore provided the following testimony:

Mr. Moore alleged that he has not worked since September of 2008, when he was an automotive technician at Pomoco Chrysler in Hampton, Virginia. R. 35. Mr. Moore worked at Pomoco (also known as Pomoco Motors or Poquoson Motors) from 2003 until 2008, when he left for a brief period of time, just to return a few months later before permanently leaving the position. R. 35-36. Mr. Moore has only ever worked as an automotive technician. R. 36. Mr. Moore left his job at Pomoco because his "health issues wouldn't allow [him] to continue working." R. 35.

When asked to describe his disabling symptoms, Mr. Moore described a combination of symptoms that get "severe enough" to the point he has difficulty functioning at all. R. 39. Specifically, he described fatigue, shortness of breath, an elevated heart rate, rare fainting spells, arrhythmias, general weakness, and occasional migraine headaches. R. 39-41. On a typical day, Mr. Moore wakes up around 10:00 a.m., "sit[s] around for a while," uses the computer to browse the Internet, and if he starts to feel better, he might try to do other activities. R. 36-37. Mr. Moore described "good days" as days when he feels decent and his symptoms are mild, and "bad days" as days when the combination of symptoms are intolerable. R. 37-38. On "good days," Mr. Moore might be able to drive to his mother's house, spend time with her and go out to lunch, or walk with her as she takes her two dogs for a walk. R. 37. Ultimately, he will return home

---

[3] Mr. Moore was born on March 25, 1986. R. 142. At the time of his alleged onset of disability on September 30, 2008, he was twenty-two years old. At the ALJ hearing, on July 13, 2010, he testified that he was twenty-two years old, but was in fact twenty-four years old. R. 33. The Court will use an age of twenty-two years, which is how old Mr. Moore was at the alleged time of disability onset.

and sit around and spend more time on the computer. *Id.* He might attempt to clean or do house work, but typically his wife does the shopping and work around the house. *Id.* Mr. Moore testified to not having social or religious activities and functions, and no other hobbies to pass the time other than use of the computer. R. 37-38.

On "bad days," Mr. Moore might need assistance with his own care, including bathing or dressing. R. 38. He also will not go out, spend most of the time sitting or lying around in bed, watching TV, playing on the computer, and "killing time like that." R. 39. Mr. Moore described having more bad days than good days, "probably four to five bad days a week," where the combined effect of symptoms is too much to handle. *Id.* The symptoms get worse when Mr. Moore engages in physical exertion that lasts for ten minutes or longer, which then prevents Mr. Moore from engaging in any other sort of physical activity. R. 40. On bad days he is typically unable to stand for more than ten minutes at a time. R. 43. Mr. Moore also described physical constraints and an inability to lift more than a gallon of milk. R. 44.

In reaching his decision, the ALJ found that Mr. Moore's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Mr. Moore's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment. R. 21. Specifically, the ALJ relied on, and summarized, medical reports from four treating physicians between 2008 and 2009, including three cardiologists: Dr. Gillen, R. 21-22, 249-89, 290-304, 360-411, Dr. Banerjee, R. 22, 445-50, and Dr. Lee, R. 22-23, 416-34, 451-587, and a neurologist, Dr. Trefts, R. 22, 349-59, 435-40. All four doctors reported generally normal and unremarkable findings, after performing physical examinations, including an electromyogram, an EKG, and an echo test

with no significant abnormalities, despite Mr. Moore's persistent complaints of chest pains, shortness of breath, lightheadedness, nausea, general weakness, and heart palpitations. R. 21-24.

Notably, between August 31, 2008 and January 17, 2009, a period of less than five months, Mr. Moore visited the emergency room on six different occasions complaining of similar symptoms, but with generally normal test results and unremarkable treatment. *Id.* Indeed after one such visit on November 7, 2008, during which an ECG, a chest PA, and a lateral exam showed normal results, the treating doctor believed Mr. Moore was clearly showing signs of hypochondria, and he was discharged home in stable condition. R. 22 (citing R. 360-411).

Moreover, the ALJ questioned Mr. Moore's credibility because of the discrepancy in written statements he provided prior to the hearing and the testimony he provided during the hearing. R. 23. Specifically, the ALJ noted that Mr. Moore's written statement "painted a picture of himself as being totally incapacitated . . . as bedridden . . . that he cannot go out alone, cannot drive, and cannot do anything without assistance, including bathing and dressing." *Id.* However, during the hearing, Mr. Moore testified as summarized above, which was substantially different, in that he was capable, at times, of caring for himself, driving to his mother's house, going for walks, attempting household chores, and watching TV and using the computer.

Treating cardiologist Dr. Lee opined on June 8, 2009 that given Mr. Moore's symptoms and poor response to treatment, he would "not be able to function in a workplace, and should be granted disability." R. 23, 419. However, the ALJ only assigned slight weight to Dr. Lee's opinion, because he found the opinion to be contradictory to Dr. Lee's own notes, and the objective medical evidence as a whole. *Id.* The ALJ also considered the medical source opinions from non-examining state agency Disability Determination Services ("DDS")

consultants, who recommended an RFC finding of light work. R. 24 (citing 64-75, 76-87, 90-101, 102-113). However, the ALJ only assigned moderate weight to their opinions, because the ALJ believed that the evidence supported a "more restrictive residual functional capacity assessment" for Mr. Moore than what the DDS consultants recommended. *Id.*

Overall, based on the objective medical evidence in the record, the weight assigned to the treating physician's opinion and the DDS consultants, and the assessment of Mr. Moore's own credibility, the ALJ determined that Mr. Moore had an RFC to perform the full range of sedentary work, which was more restrictive than the DDS consultants' opinion that Mr. Moore could perform light work. *See* R. 64-75, 76-87, 90-101, 102-113.

Mr. Moore raises three issues on review: First, whether the ALJ improperly discounted the opinion of Mr. Moore's treating physician cardiologist Dr. Lee. Second, whether the ALJ improperly discounted the testimony and credibility of Mr. Moore. Third, whether the ALJ failed to consider non-exertional limitations and therefore improperly relied solely upon the Medical-Vocational Guidelines in 20 CFR Subpart P, Appendix 2. For the following reasons discussed below, the Court would affirm the final decision of the Acting Commissioner.

## IV. ANALYSIS

### A. The ALJ properly gave minor weight to treating physician Dr. Lee's opinion as to Mr. Moore's ability to work because it was inconsistent with the totality of the objective medical evidence in the record.

In considering a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 416.945(a)(1), (a)(3). If the medical evidence, including all medical examinations by all physicians, is consistent, then the ALJ makes a determination based on all the evidence. *Id.* § 416.927(c)(1). However, if any of the evidence is

inconsistent, the ALJ must decide which evidence should receive controlling weight. *Id.* § 416.927(c)-(d). A treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is not inconsistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(c)(2); SSR 96–2p.

However, if the treating source's opinion is not well-supported by medically acceptable techniques or is inconsistent with the other substantial evidence, the treating physician's opinion will not be given controlling weight. *Baxter v. Astrue*, No. 3:11-CV-679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013) (citation omitted). The treating physician's opinion will also not be given controlling weight if the physician opines on an issue reserved for the Commissioner, such as whether the claimant is disabled for employment purposes. *See Jarrells v. Barnhart*, No. 7:04–CV–411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *accord* 20 C.F.R. §§ 404.1527(d)(3), (e). If the opinion is deemed not controlling, then the ALJ determines the weight of the opinion by considering the factors in 20 C.F.R. § 404.1527: the length, nature, and extent of the treatment relationship; frequency of examinations; supportability by relevant evidence; consistency with the record as a whole; the physician's degree of specialization; and any other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). In light of these principles, Mr. Moore argues that the ALJ improperly gave "slight weight" to Dr. Lee's June 8, 2009 opinion, and that because Dr. Lee had treated Mr. Moore for a substantial period of time, his opinion was owed more weight. ECF No. 13 at 11-12. Mr. Moore believes that Dr. Lee's treatment notes over time are consistent with his medical opinion that Mr. Moore "will not be able to function in

the workplace and should be granted disability," because Dr. Lee has observed the progressive worsening of Mr. Moore's symptoms since an emergency room visit in January of 2008. *Id.* at 13. Overall, Mr. Moore argues that the ALJ overlooked Dr. Lee's documentation of serious symptoms like rapid heart rate, lightheadedness, muscular weakness, occasional fainting, and general fatigue, when he assigned his opinion slight weight. *Id.* at 13-14.

Even though Dr. Lee was a treating physician, his medical opinion was entitled to controlling weight only if it was not inconsistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(c)(2); SSR 96–2p. The regulations do not require that an ALJ accept opinions from a treating physician in every situation. *See* 20 C.F.R. §§ 404.1527(d)(3), (d)(4), (e). While opining on the issue of whether the claimant is disabled for purposes of employment is an issue reserved for the Commissioner, *see Jarrells v. Barnhart*, 2005 U.S. Dist. LEXIS 7459, at *10-11 (W.D. Va. Apr. 26, 2005), the opinion of the treating physician can be disregarded by the ALJ only if there is persuasive contrary evidence. *Rita v. Humprhey*, 2002 U.S. Dist. LEXIS 16659, at *16 (W.D.N.C. Aug. 29, 2002) (citing *Wilkins v. Sullivan*, 953 F.2d 93, 96 (4th Cir. 1991)).

Here, the ALJ found that Dr. Lee's opinion that Mr. Moore "should be granted disability" was contradictory to his own notes, which show that over time, Mr. Moore underwent a battery of tests and examinations, all with relatively normal results. R. 23. Substantial evidence in the record supports the ALJ's determination that Dr. Lee's opinion was only entitled to slight weight. Throughout his treatment of Mr. Moore in 2009, the most notable clinical finding was the fluctuation and irregularity of Mr. Moore's heart rate based on postural changes. R. 416-34, 445-50. However, the record supports the ALJ's findings that Dr. Lee's observations "were

otherwise generally within normal limits. This is consistent with the remainder of the record, which shows test after test that was normal, including a normal echocardiogram, normal stress test, normal electromyogram, and a normal EEG." R. 23.

In addition to normal test results from the various treating cardiologists and neurologists, Mr. Moore was treated by emergency room doctors on six different occasions between August 31, 2008 and January 17, 2009 for general complaints of chest pain, shortness of breath, lightheadedness, and nausea. Each time, he was discharged in stable condition with unremarkable care instructions. *See* R. 285 (on August 31, 2008 he was discharged to home in stable condition with instructions to take Pepcid); R. 402 (on September 12, 2008 he was discharged to home in stable condition); R. 301, 392 (on September 20, 2008, he was discharged to home in stable condition); R. 383 (on October 13, 2008, he was discharged to home in stable condition); R. 371 (on November 7, 2008, he was discharged to home in stable condition and the doctor stated that "patient [was] clearly hypochonriacal and obsessively focused on a wide variety of somatic symptoms of non-organic origin"); and R. 313 (on January 17, 2009 he was discharged to home in stable conditions with medication for an upper respiratory infection).

Moreover, the two DDS consultants opined that Mr. Moore had the RFC to perform a range of light work. R. 68-75, 94-101. The ALJ only assigned moderate weight to the DDS opinions when he restricted Mr. Moore to sedentary work, thereby sufficiently accounting for Mr. Moore's limitations and restrictions as documented and supported by the totality of the evidence in the record, and in Dr. Lee's treatment history notes. Therefore, it was proper for the ALJ to not give controlling weight to Dr. Lee, based on the inconsistency of his opinion in light of the minimal diagnostic findings, the conservative treatment history, and medical records as a

whole that show generally normal results. *Cf. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Court would affirm the decision of the Acting Commissioner on this basis.

### B. The ALJ's credibility assessment of Mr. Moore was also proper.

Next, Mr. Moore argues that the ALJ improperly found his subjective complaints incredible. ECF No. 13 at 13-17. In determining Mr. Moore's RFC, the ALJ considers (1) impairments supported by the objective medical evidence and (2) impairments based on Mr. Moore's subjective complaints. *Craig v. Chater*, 76 F.3d 586, 594 (4th Cir. 1996). When considering Mr. Moore's subjective complaints and allegations of symptoms and functional limitations, the ALJ must make a credibility assessment of the intensity of the symptoms to determine the true degree of limitation. *Id.*; *see also* 20 C.F.R. § 404.1529(a); SSR 96-7p. Under the *Craig* test, the ALJ must first determine whether there is an underlying medically-determinable physical or mental impairment that reasonably could produce the pain or symptoms. *Id.* If so, then the second step requires the ALJ to evaluate the claimant's statements about the intensity and persistence of the pain and the extent to which it affects or limits the ability to work. *Id.* Throughout the analysis, the ALJ must sufficiently explain the conclusions, including the weight assigned to the relevant evidence, so that a reviewing court can evaluate the basis for the final decision. *Ivey v. Barnhart*, 383 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)). However, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's

12

observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)).

Mr. Moore argues that it was improper for the ALJ to find his testimony only "partially credible," and instead, asks this Court to find that the ALJ failed to comply with agency regulations because the medical evidence confirms his rapid heartbeat significantly limits his functioning and renders him disabled. ECF No. 13 at 16. After considering the entirety of the evidence, the ALJ determined that Mr. Moore's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Mr. Moore's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC finding. R. 21. Specifically, in finding Mr. Moore only partially credible, the ALJ noted the substantial difference between his written statement, which characertized Mr. Moore as completely bedridden, and his testimony at the hearing, where he was functional on good days and able to leave the house, drive, watch TV, use the computer, walk with his mother, and attempt household chores. R. 23. Substantial evidence in the record supports the ALJ's credibility assessment.

Over time, Mr. Moore has complained of the following ailments: dysautonomia, chills, fatigue, shortness of breath, high blood pressure, dizziness, blurring vision, chest pains, heart palpitations or arrhythmia, orthopnea, nausea, reflux symptoms, abdominal pain, joint pain, muscle weakness, stiffness, memory loss, heat intolerance, and migraine headaches. ECF No. 13 at 13; R. 20, 38-41. The ALJ found that Mr. Moore had two severe impairments: dysautonomia (autonomic nervous system dysfunction typically regarding heart rate and blood pressure) and bradycardia-tachycardia syndrome (term used to describe several heart rhythm disorders,

including abnormally slow or fast heart rates). R. 18-19.

There is substantial evidence in the record to support the ALJ's determination that Mr. Moore's extensive history of subjective complaints of pain are not credible in light of the objective medical evidence and his ability to perform daily activities. He has visited emergency room multiple times, been examined by various cardiologists and neurologists, and ultimately, the result is the same: Mr. Moore is a young adult male with an abnormal heart rate, which can be treated by medication, and therefore, doctors typically sent him home in stable condition and under otherwise normal circumstances. His testimony of complete incapacitation, or even partial incapacitation, cannot be reconciled with the objective evidence in the record and his own testimony regarding "good days." Moreover, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). In discounting Mr. Moore's testimony about his subjective pain, the ALJ properly relied on the medical evidence in the record in applying the correct agency regulations to determine he had the RFC to complete sedentary work, which accounts for any heart rate abnormalities. Substantial evidence in the record supports the ALJ's credibility determination. Therefore, the Court would uphold the Acting Commissioner's final decision on this issue as well.

### C. The ALJ properly relied solely on the Medical-Vocational Guidelines in determining that Mr. Moore was not disabled.

Lastly, Mr. Moore argues that the ALJ failed to consider the non-exertional limitations associated with his heart conditions, including fatigue and weakness, when making the final disability determination. ECF No. 13 at 17-19. Specifically, Mr. Moore claims that the ALJ

improperly relied solely on "the grids" by failing to acknowledge that Mr. Moore suffered from nonexertional impairments, mainly fatigue and weakness, when considering whether he can perform the full range of work activity within a grid category. ECF No. 13 at 18.

Limitations on a claimant's ability to meet certain demands of a job are characterized as exertional, nonexertional, or a combination of both. 20 C.F.R. § 404.1569a(a). Exertional limitations relate to an individual's physical capacity to meet the strength demands of a job, specifically, demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* Limitations that affect an individual's ability to meet the demands of a job other than the strength demands listed above are considered nonexertional. *Id.*

After the ALJ has determined the individual's RFC, the ALJ then moves onto step five in the sequential analysis, to determine whether the individual is capable of performing other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g)(1). Where a claimant suffers only exertional limitations, that is, where there are only limits on the individual's physical strength functioning, the ALJ consults the Medical-Vocational Guidelines, colloquially known as "the grids," located in 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. § 404.1569a(b); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Because the grids are predicated on the claimant suffering from exertional limitations, conversely, the grids are not applicable if the claimant suffers solely from nonexertional limitations. 20 C.F.R. § 404.1569(a).

However, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ consults the grids first to determine whether a rule directs a finding of disabled based on the exertional/strength requirement alone. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). If

15

the claimant is found to be "disabled" on the strength requirement alone, then there is no need to examine the effects of nonexertional limitations. Alternatively, if a grids rule directs a finding of "not disabled" based on the exertional limitations alone, then the ALJ cannot rely exclusively on the grids, but instead, the grids must be used as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.*; *see also Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). In such a situation, the testimony of a vocational expert is then necessary to assist the ALJ in determining whether there are jobs existing in significant numbers in the national economy that the claimant can perform. *Walker*, 889 F.2d at 49-50.

Here, the ALJ found that Mr. Moore had two severe impairments: dysautonomia and bradycardia-tachycardia syndrome, both relating to Mr. Moore's heart rate condition, and both of which constitute exertional limitations because they impact Mr. Moore's ability to sit, stand, walk, lift, carry, push, and pull. R. 18-19 ("[These impairments] limit the claimant's ability to perform the *strength demands* of basic work activities, including, but not limited to, lifting, carrying, standing, and walking.") (emphasis added). Because the ALJ determined that Mr. Moore had only exertional impairments, in step five of the analysis, the ALJ used "the grids," specifically Medical-Vocational Rule 201.28 and Rule 201.29, in conjunction with Mr. Moore's RFC for the full range of sedentary work, and his age, education, and work experience, to direct a finding of "not disabled." R. 25. The Court would find that the ALJ correctly used the Medical-Vocational Guidelines. Mr. Moore's argument is misplaced.

First, the ALJ did not find "fatigue" and "weakness" to constitute severe impairments.

16

*See* R. 18-19; *accord Tucker v. Astrue*, No. 10-cv-1039, 2012 WL 1119518 (D. Md. Apr. 2, 2012). Not every nonexertional limitation rises to the level of a nonexertional impairment so as to preclude reliance on the grids. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). "The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's [RFC] to perform work of which he is exertionally capable." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Here, aside from the dysautonomia and bradycardia-tachycardia syndrome, the ALJ determined that all of the other alleged impairments by Mr. Moore, including his fatigue, pain, and weakness, were nonsevere. R. 19. Because the ALJ found that these limitations "did not result in any continuous exertional or nonexertional functional limitation," *id.*, and because the only severe limitations were exertional, the ALJ properly relied on the grids to arrive at a finding of not disabled. 20 C.F.R. § 404.1569a(b); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Therefore, the Court would affirm the Acting Commissioner's decision on this basis as well.

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Mr. Moore's Motion for Summary Judgment, ECF No. 12, be **DENIED**; the Defendant's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date

this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 4, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

John H. Klein
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, Virginia 23510
Counsel for the Plaintiff

Virginia L. Van Valkenburg
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

_____
Fernado Galindo
Clerk of the Court


By:
    Deputy Clerk
    November ____, 2013